United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

XIAOMEI WANG,

Plaintiff,

v.

ANDREW SAUL,

Defendant.

Case No. 19-cv-03919-JSC

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 18, 21

Xiaomei Wang seeks social security benefits for physical and mental impairments including fibromyalgia, generalized arthralgia and myalgia, abdominal and epigastric pain, bilateral hand weakness and pain, memory problems, anger problems, mood swings, an unspecified anxiety disorder, and an unspecified depressive disorder. (*See* Administrative Record ("AR") 37-38.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying her benefits claim. (Dkt. No. 1.)[1] Before the Court are Plaintiff's and Defendant's motions for summary judgment.[2] (Dkt. Nos. 18 & 21.) Because the Administrative Law Judge's ("ALJ's") determination that Plaintiff's diagnosed fibromyalgia is not a medically determinable impairment constitutes reversible error, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross motion, and REMANDS for further proceedings.

**BACKGROUND**

Plaintiff filed an application for disability benefits under Title II of the Social Security Act (the "Act") on December 8, 2014, alleging a disability onset date of December 31, 2007. (AR

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 2, 10, 15.)

279-287.) Her application was denied both initially and upon reconsideration. (AR 160, 165.) Plaintiff then submitted a written request for a hearing before an ALJ, and her hearing was held before ALJ Arthur Zeidman on November 2, 2016. (AR 60.) This hearing was postponed so Plaintiff could obtain representation and see an independent consultative physician. (AR 76.) After obtaining an attorney, another hearing was held on March 7, 2017. (AR 78.) Because Plaintiff is a Mandarin speaker and her interpreter was unable to attend the entire hearing, the ALJ conducted a final hearing on March 22, 2017. (AR 104-106, 108.) On May 24, 2017, The ALJ issued a decision finding that Plaintiff was not disabled. (AR 34.) The ALJ found that Plaintiff had the severe impairments of generalized arthralgia and myalgia, abdominal and epigastric pain, and muscle weakness and pain in her bilateral hands, but that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (AR 37-38.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain limitations. (AR 39.) The ALJ concluded that Plaintiff was not disabled because she was capable of performing past relevant work that did not require the performance of work-related activities precluded by her RFC. (AR 42.)

Plaintiff filed a request for review of the ALJ's decision and the Appeals Council denied review of the ALJ's decision on January 14, 2019. (AR 7-11, 20.) Plaintiff then sought review in this Court. (Dkt. No. 1.) In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment. (Dkt. Nos. 18 & 21), which are now ready for decision without oral argument.

**ISSUES FOR REVIEW**

1. Did the ALJ err in failing to find that Plaintiff's fibromyalgia or mental impairments constituted medically determinable severe impairments?
2. Did the ALJ err in his evaluation of Plaintiff's subjective pain symptom testimony?
3. Did the ALJ err in weighing Plaintiff's medical opinion evidence?

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a severe "medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, the claimant can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see also* 20 C.R.F. §§ 404.1520(a), 416.920(a).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted). However, "a decision supported by substantial evidence will still be set aside if the ALJ does not apply proper legal standards." *Id.* A court "must consider the entire record as a whole, weighing both the evidence that supports and

the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

**DISCUSSION**

Plaintiff asserts that the ALJ's Step Two findings regarding her fibromyalgia and mental impairments were unsupported by substantial evidence, that the ALJ failed to provide clear and convincing reasons for discrediting her subjective pain symptom testimony, and that the ALJ erred in his evaluation of the medical opinions. (Dkt. No. 18 at 2.) The Court agrees.

**I. Step-Two Determinations Regarding Fibromyalgia and Mental Impairments**

It is the claimant's burden to demonstrate the existence of a medically determinable impairment through medical evidence. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) ("The Secretary . . . has express statutory authority to place the burden of showing a medically determinable impairment on the claimant."); *see also* 20 C.F.R. § 404.1508 (providing that claimant must establish existence of medically determinable impairment from "medically acceptable clinical and laboratory diagnostic techniques"). The Ninth Circuit has recognized, however, that the step-two inquiry is a "*de minimis* screening device to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (internal quotation marks and citation omitted).

**A. Fibromyalgia**

Plaintiff challenges the ALJ's finding that Plaintiff's diagnosed fibromyalgia is "not a medically determinable impairment" on the grounds that the record did not provide the ALJ with substantial evidence to support this conclusion. ( *See* AR 37 (citing Social Security Ruling ("SSR") 12-2P.) The Court agrees.

"Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (internal quotation marks and citation omitted). Symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with [the] disease."

*Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Individuals suffering from fibromyalgia have normal "muscle strength, sensory functions, and reflexes." *Revels*, 874 F.3d at 656. Further, "there are no laboratory tests to confirm the diagnosis." *Benecke*, 379 F.3d at 590. Fibromyalgia is thus "diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Id.*

The Social Security Administration's Ruling 12-2P governs the evaluation of fibromyalgia. *Revels*, 874 F.3d at 656 n.2. The Ruling states that the SSA will find that a claimant has a medically-determined impairment of fibromyalgia if a physician has diagnosed the claimant with fibromyalgia, (2) the diagnosing physician's provides evidence that meets at least one of two sets of criteria set forth in the Ruling, and (3) the diagnosis is not inconsistent with other record evidence. SSR 12-2P, 2012 WL 3104869 *2 (July 12, 2012). With respect to the two sets of criteria, the Ninth Circuit has explained:

> [SSR 12-2P] provides two sets of criteria for diagnosing the condition, based on the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria. [SSR 12-2P, at *2.]
>
> Pursuant to the first set of criteria, a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has tenderness in at least eleven of eighteen specified points on her body; and (3) there is evidence that other disorders are not accounting for the pain. *Id*. at *2-3. (The 1990 ACR Criteria).
>
> Pursuant to the second set of criteria, a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence that other disorders are not accounting for the pain. (The 2010 ACR Criteria).

*Revels*, 874 F.3d at 656-57.

As the ALJ recognized, Plaintiff's treating physician Dr. Law diagnosed Plaintiff with fibromyalgia. (AR 37.) The ALJ's next consideration then, was whether the record provided

evidence that satisfied at least one of the two sets of criteria set forth in SSR 12-2P. The ALJ concluded at this step that the evidence did not satisfy either the 1990 or 2010 ACR Criteria, and therefore Plaintiff did not establish the existence of fibromyalgia as a medically determinable impairment. (AR 37-38.)

The ALJ's determination regarding Plaintiff's failure to satisfy either the 1990 or 2010 ACR Criteria is not supported by substantial evidence. The record demonstrates that Plaintiff meets the 1990 ACR Criteria's requirements. *Revels,* 874 F.3d at 656-57. First, Dr. Law determined that Plaintiff had a history of widespread pain that lasted for at least three months. (AR 510.) In his Fibromyalgia Medical Assessment Form, Dr. Law noted that Plaintiff experienced multi-joint pain without redness or swelling, recurrent and severe headaches, diffuse muscle pain, leg cramps, muscle pain, sore throat, chronic pain, and carpal tunnel syndrome. (AR 510.) Dr. Law's treatment notes support this assessment. Dr. Law began treating Plaintiff in January 2014; he saw Plaintiff approximately once a month— more frequently at certain times as her symptoms recurred—and completed his Fibromyalgia Medical Assessment Form on February 11, 2015. (AR 504, 510.) This period of treatment exceeds three months. Throughout his course of treating Plaintiff, Dr. Law's treatment records indicate that Plaintiff suffered hand pain, chronic sensitivities, general osteoarthritis, multiple area pain, edema, osteoporosis, multiple joint tenderness, joint pain, and all joint tenderness. (AR 457-471, 521-526.) Dr. Law's February 11, 2015 RFC Form additionally noted that Plaintiff had multiple joint pain involving all joints in all extremities, morning stiffness of muscles, an inability to turn her head fully, and swelling of finger joints in both hands. (AR 504.)

Second, Dr. Law determined that Plaintiff had tender points in at least 11 of 18 specified points on her body as required by SSR 12-2P. In fact, in his Fibromyalgia Medical Assessment Form, Dr. Law determined that all possible tender points were positive for pain upon digital palpitation. (AR 511.)

Finally, Dr. Law determined that no other disorders were the cause of Plaintiff's pain. (AR 512.) Dr. Law ordered Plaintiff to undergo a series of blood tests and panels, to wear a heart-monitoring holster monitor, to undergo a DXA bone density scan, and other tests that evaluated

her white and red blood cell counts. (AR 475-479, 480-492, 493-497, 668.) In rendering his diagnoses in both the RFC and Fibromyalgia Medical Assessment Forms, Dr. Law either implicitly or explicitly ruled out other conditions as the source of Plaintiff's chronic pain. (*See* AR 504 (citing the results of Plaintiff's blood panel regarding Vitamin D levels as support for his findings regarding Plaintiff's diagnoses); AR 510 (stating that Plaintiff met the ACR's 2010 diagnostic criteria and that Plaintiff's TSH 4.69(H) test result was a "positive clinical finding" in support of his fibromyalgia diagnosis and that "all other possible causes of [Plaintiff's] symptoms [had] been ruled out[.]").) Therefore, Dr. Law's diagnosis satisfied every element of the 1990 ACR Criteria.

Plaintiff's evidence also satisfied the 2010 ACR Criteria. *Revels*, 874 F.3d at 657. First, for the reasons set out above, Plaintiff established that she suffered widespread pain that lasted at least three months. Second, Dr. Law's treatment notes further establish that she experienced repeated manifestations of at least six fibromyalgia signs or symptoms during his time as Plaintiff's treating physician. During this time, Dr. Law's assessments determined that Plaintiff repeatedly manifested fatigue, "multiple area pain[,]" hand and joint pain, "generalized joint pain[,]" muscle pain, anxiety, possible sleep apnea, osteoarthritis, edema, memory loss, irregular sleep, and insomnia. (AR 457, 459, 467-68, 471, 522-526, 648-650, 653, 656-658, 660-661, 664-666, 669.) These constitute signs and symptoms of fibromyalgia. *See* SSR 12-2P; *see also* *Revels*, 874 F.3d at 656-57. Dr. Law also diagnosed Plaintiff with irritable bowel syndrome, a co-occurring condition under SSR 12-2P. (AR 504.) Third, as explained above, there is evidence that other disorders did not account for Plaintiff's pain.

Further, Dr. Masood's findings support Dr. Law's determinations and diagnosis. Dr. Masood's examination of Plaintiff's hands was "remarkable for tenderness which affect[ed] all the joints of fingers of both hands," and revealed that Plaintiff experienced pain when moving her extremities. (AR 539.) In light of this examination, Dr. Masood concluded that Plaintiff had "possible fibromyalgia." (AR 539.) The ALJ did not reference these findings from Dr. Masood's December 2, 2016 evaluation, nor was Dr. Masood's conclusion regarding the possible fibromyalgia considered in the ALJ's step-two determination. (AR 37.)

For these reasons, the ALJ erred in concluding that Plaintiff's fibromyalgia was not a medically determinable impairment. Despite Dr. Law's diagnosis, the result of Dr. Masood's evaluation, and the "de minimis" nature of the step-two inquiry to dispose of "groundless claims," *see Edlund*, 253 F.3d at 1158, the ALJ incorrectly determined Plaintiff's fibromyalgia was not a medically determinable impairment. The record presents substantial evidence demonstrating that Plaintiff's diagnosis satisfied the guidance set forth in SSR 12-2P for both the 1990 and 2010 ACR diagnostic criteria, and was sufficient for the ALJ to find at step two that Plaintiff's diagnosed fibromyalgia was not only a medically determinable impairment, but likely a severe impairment. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (noting that at step two an impairment "can be found not severe only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work") (internal quotations and citation omitted).

The substantial evidence of record exposes why Defendant's argument that the ALJ "reasonably concluded" that Plaintiff did not satisfy SSR 12-2P's criteria fails. Nonetheless, Defendant argues that any step two error was harmless because the ALJ assessed other medically determinable impairments that "encompassed the alleged fibromyalgia symptoms[.]" (Dkt. No. 21 at 13.) Incorrect. First, an ALJ is required to consider "all of [a Plaintiff's] medically determinable impairments," both severe and non-severe, when assessing the Plaintiff's RFC. 20 C.F.R. § 416.945(a)(2). Furthermore, an ALJ's error is only harmless where it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin*., 454 F.3d 1050, 1055 (9th Cir. 2006).

**B. Mental Impairments**

Plaintiff next argues that the ALJ committed legal error at step two by finding that she did not have a medically determinable mental impairment.

The ALJ noted that Plaintiff testified at the March 22, 2017 hearing regarding her anxiety, memory loss, and depression, but determined that the record did not show evidence of a "mental diagnosis or treatment during the relevant adjudicatory period." (AR 127-129, 38.) One note from Plaintiff's treatment at Zhongshan Hospital in China dated November 27, 2007, however,

states in translation that "sometimes [Plaintiff] feels flustered and have [sic] a sense of panic." (AR 676.)[3] Additionally, Plaintiff reported to Dr. Ozer that she had experienced symptoms of anxiety and depression since being laid off from her job in 2007, and that those symptoms worsened after her mother's death in 2009. (AR 737.) After conducting a series of emotional, psychological, and cognitive tests, Dr. Ozer diagnosed Plaintiff with an unspecified anxiety disorder and an unspecified depressive disorder whose "[s]ymptoms have persisted since at least 2007." (AR 735-749.) Based on the extensiveness of these evaluations, Dr. Ozer's report constitutes medical evidence under 20 C.F.R. § 404.1521.

Contrary to Defendant's characterization of Dr. Ozer's report as "speculative," Dr. Ozer determined—after conducting multiple tests over two days—that the symptoms of Plaintiff's unspecified depressive and unspecified anxiety disorders had "persisted since at least 2007 and have caused significant distress[.]" (AR 748.) Plaintiff may "establish [] continuing disabling severity by means of a retrospective diagnosis." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1461 & n.5 (9th Cir. 1995). Therefore, because Dr. Ozer's evaluation provided a retrospective diagnosis of two mental disorders during the relevant adjudicatory period, substantial evidence did not support the ALJ's determination that Plaintiff had no mental impairments at the step two inquiry.

The record refutes Defendant's argument that substantial evidence supported the ALJ's step two findings regarding Plaintiff's mental disorders. Furthermore, because an ALJ is required to consider "all of [a Plaintiff's] medically determinable impairments," both severe and non-severe, when assessing the Plaintiff's RFC, 20 C.F.R. § 416.945(a)(2), the ALJ's failure to do so regarding Plaintiff's mental disorders does not constitute harmless error.

## II. Subjective Pain Symptom Testimony

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo*, 871 F.3d at 678. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying

---

[3] Plaintiff's translations of her Chinese medical documents were performed and certified by an advocate, "fluent in Chinese," affiliated with Bay Area Legal Aid. (AR 671.)

impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (internal quotation marks and citation omitted). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (AR 41.) Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of her symptoms, or else find evidence of malingering. *Lingenfelter*, 504 F.3d at 1036. The ALJ found no evidence of malingering, but found that the evidence did not support Plaintiff's allegations of "debilitating impairments" because her statements "concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 39, 41.)

The ALJ's boilerplate finding is not a clear and convincing reason supported by substantial evidence for rejecting Plaintiff's subjective allegations regarding her functional capacity. *See Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1103 (9th Cir. 2014) ("An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for our review.") (internal quotations omitted). "To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying 'which testimony [the ALJ] found not credible' and explaining 'which evidence contradicted that testimony.'" *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017) (quoting *Brown–Hunter v. Colvin*, 806 F.3d 487, 489, 494 (9th Cir. 2015)). Here, while the ALJ briefly discussed Plaintiff's March 22, 2017

hearing testimony regarding failed surgeries in China and determined the record "[did] not show evidence" of failed surgeries, this discussion of whether evidence existed in the record does not address Plaintiff's testimony regarding her functional capacity. (AR 40.) At bottom, the ALJ provided no reasons for rejecting Plaintiff's subjective allegations and, instead, discussed the medical evidence at length, but did not tie that evidence to any particular portions of Plaintiff's testimony that he did not find credible regarding her functional capacity.

Further, the objective medical evidence reflects that the ALJ improperly cherry-picked evidence that supported his conclusion while ignoring medical evidence that contradicts his conclusion. *See Cotton v. Astrue*, 374 Fed.Appx. 769, 773 (9th Cir. 2010) (holding that an ALJ's "cherry-picking of [claimant's] histrionic personality out of her host of other disorders is not a convincing basis for the adverse credibility finding"); *see also Williams v. Colvin*, No. ED CV 14-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination."). In particular, in his discussion of Dr. Masood's evaluation the ALJ notes that Plaintiff was diagnosed with generalized arthralgia and myalgia, fatigue, insomnia, cognitive dysfunction, possible fibromyalgia, possible osteoporosis, low back pain, depression, and hypothyroidism. (AR 40-41.) This omits Dr. Masood's diagnosis of Plaintiff's unspecified depressive and anxiety disorders, their "severe" symptoms, as well as the "severe psychological impairment[s]" they caused Plaintiff. (AR 747-748.) Dr. Masood also strongly recommended that Plaintiff receive psychological treatment and that she may benefit from psychiatric medications. (AR 748.) Dr. Masood concluded that Plaintiff's performance on the evaluation's cognitive and psychological tests "indicate[d] that [Plaintiff] is experiencing impairment in most work-related areas." (AR 748.) The ALJ's selective reliance on excerpts of Dr. Masood's records that support his ultimate conclusion while ignoring Dr. Masood's diagnoses and findings regarding Plaintiff's impairments was in error.

Defendant argues that the ALJ appropriately considered the objective medical evidence in discrediting Plaintiff's subjective symptom testimony, including "Plaintiff's largely unremarkable physical examinations" and Dr. Masood's examination findings, and that this evidence

"reasonably" failed to support Plaintiff's allegations of debilitating symptoms. (Dkt. No. 21 at 18-19.) According to Defendant, the ALJ properly identified that Plaintiff's subjective testimony was not consistent with the record. (Dkt. No. 21 at 20.) This argument, however, does not address the ALJ's failure to provide clear and convincing reasons for the testimony he found not credible and explaining "which evidence contradicted that testimony," *Laborin*, 867 F.3d at 1155, and ignores the ALJ's "cherry-picking" of Dr. Masood's evaluation, *see Cotton*, 374 Fed.Appx at 773.

Defendant further argues that the ALJ appropriately discounted Plaintiff's subjective symptom testimony on the basis that the lack of mental health treatment undermines her claims of debilitating mental health symptoms. (*See* AR 38 ("The claimant's record does not show evidence of a mental diagnosis or treatment during the relevant adjudicatory period[.]").) The ALJ's assessment, however, was based in part on evidence of Plaintiff's treatment in China from November 2007 to February 2008, and how during this time Plaintiff did not mention "receiving any psychiatric, psychological, or specialized mental health treatment." (AR 38.) The ALJ failed to consider that Plaintiff was uninsured while she sought medical treatment in China. (AR 73, 95-97.) A claimant's "failure to receive medical treatment during the period that [s]he had no medical insurance cannot support an adverse credibility finding." *Orn v. Astrue*, 495 F.3d 625, 635. Therefore, Plaintiff's inability to seek mental health treatment in China while uninsured cannot serve as a basis for discounting Plaintiff's subjective pain symptom testimony.

Plaintiff later acquired health insurance in 2014, and stated in the March 7, 2017 hearing that she was also insured when she sought treatment in 2011 and 2012 at the Tri-City Health Care Center. (AR 97.) Plaintiff was seen at Washington Hospital's Emergency Room for a panic attack on October 24, 2016. (AR 585.) Other than this emergency room visit, she denied ever seeing a psychiatrist, psychologist, or receiving any other mental health services. (AR 738.) Plaintiff reported to Dr. Ozer that she wanted to see a therapist but was unable to find one who spoke Mandarin. (AR 738.) While an ALJ "is permitted to consider lack of treatment in his credibility determination[,]" *Burch*, 400 F.3d at 681, an ALJ must also "consider and address reasons for not pursuing treatment that are pertinent to an individual's case," including possible language limitations, SSR 16-3P. The ALJ did not address Plaintiff's concern for and inability to

find a Mandarin-speaking mental health professional—in fact, the ALJ did not address any reasons at all for why Plaintiff did not pursue mental health treatment. (AR 38.)

* * *

Accordingly, the ALJ failed to provide specific, clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective testimony regarding her functional capacity. Furthermore, the ALJ erred by failing to consider the reasons for Plaintiff's lack of mental health treatment when making his credibility determination and therefore erred in finding her testimony not credible.

**III. Medical Opinions**

In assessing an ALJ's consideration of the medical opinion evidence, courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn*, 495 F.3d at 631.

An ALJ may reject the "uncontradicted opinion of a treating or examining doctor" only by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks and citation omitted). And "[e]ven if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (citation omitted). That said, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) ("[T]o the extent that [the nontreating physician's] opinion rests on objective clinical tests, it must

be viewed as substantial evidence.") (alterations in original). Likewise, the opinions of nonexamining physicians may "serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id*. Ultimately, "[t]he ALJ must do more than offer his conclusions" when rejecting a medical opinion; instead, she "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Thus, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014).

Plaintiff asserts the ALJ erred in evaluating the medical opinions of Dr. Law, Dr. Masood, and Dr. Ozer.

**A. Dr. Law**

The ALJ gave little weight to the opinion of Dr. Law, Plaintiff's treating physician, because he found that Dr. Law's "examination notes did not identify or document the symptoms he identified in the [fibromyalgia] assessment form," his opinions in the RFC Form were unsupported by objective findings in the record, and Dr. Law began treating Plaintiff after her date last insured. (AR 38, 41-42.) Plaintiff contends that the ALJ erred in doing so because (1) Dr. Law's treatment notes contain references to many of the symptoms he listed on the Fibromyalgia Medical Assessment Form and therefore the reasons for discrediting his opinions are not supported by substantial evidence; (2) Dr. Law's submitted RFC Form opinions were supported by objective findings; and (3) Dr. Law had a longitudinal history of examining Plaintiff, and his opinions were credible even if he did not read Plaintiff's treatment notes from China. (Dkt. No. 18 at 19-20; AR 504-516.)

First, the ALJ erred in determining that Dr. Law's examination notes did not document the symptoms he identified in the Fibromyalgia Medical Assessment Form, and that the RFC Form

was unsupported by objective findings in the record. As discussed earlier, Dr. Law's treatment notes are substantial evidence that document the symptoms identified in the Fibromyalgia Medical Assessment Form he completed. (*See* AR 457, 459, 463, 467-68, 470-71, 522-526, 648-650, 653, 656-658, 660-661, 664-666, 669.) The RFC Form also determined that Plaintiff's diagnosed fibromyalgia was an "objective reason" for her pain, and the Fibromyalgia Medical Assessment Form additionally identified that all possible tender points "were positive for pain upon digital palpitation[.]" (AR 505, 511.)

Second, the ALJ erred in determining that Dr. Law's medical opinion was not credible because he began treating Plaintiff after her date last insured and that, absent evidence he reviewed her treatment notes from the relevant time period, he could not ascertain Plaintiff's limitations reaching back to December 2012. (AR 41-42.) "Retrospective diagnoses by treating physicians . . . are [] relevant to the determination of a continuously existing disability with an onset prior to expiration of insured status." *Flaten*, 44 F.3d at 1461 n.5 (9th Cir. 1995); *see also Lester*, 81 F.3d at 832 ("[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.") (internal quotations and citation omitted). Giving "little weight" to Dr. Law's medical opinion for these reasons constitutes legal error. *See Iatridis v. Astrue*, 501 F. Supp. 2d 1267, 1276 (C.D. Cal. 2007) (holding that ALJ's "discounting" of treating physician's opinion that plaintiff's work-related limitations were effective as of May 11, 1995 "because they were set forth on May 18 and September 6, 2001" constituted legal error).

Defendant argues that the ALJ properly discounted Dr. Law's testimony in light of other physicians' findings. (Dkt. No. 21 at 23.) Not so. Because Dr. Law is Plaintiff's treating physician, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Law's medical opinions on the basis of any non-treating physician's contradictory opinion. *See Lester*, 81 F.3d at 830. Substantial evidence does not support the ALJ's conclusion that Dr. Law's medical opinions regarding Plaintiff's diagnoses and work-related limitations are controverted. For instance, Raymond Y. Chan, D.C., offered Plaintiff chiropractic treatment after she was injured in a car accident on September 24, 2014; the ALJ determined her chiropractic examinations were "generally unremarkable." (AR 40, 552.)

However, Plaintiff's records from the Chan Chiropractic Center state that "at discharge, there were multiple tender points as defined by the American College of Rheumatology." (AR 554.) As discussed earlier, Dr. Masood's examination of Plaintiff's hands was "remarkable for tenderness which affect[ed] all the joints of fingers of both hands," and revealed that Plaintiff experienced pain when moving her extremities. (AR 539.) In light of this examination, Dr. Masood's conclusion that Plaintiff had "possible fibromyalgia" supports—rather than refutes—Dr. Law's medical opinions. (AR 539.)

While, unlike Dr. Law's assessment in the RFC Form, Dr. Masood's RFC assessment determined that Plaintiff could perform work-related tasks with certain limitations, the ALJ did not provide any specific or legitimate reasons for rejecting Dr. Law's opinion regarding Plaintiff's work-related limitations in light of Dr. Masood's evaluations. *See Lester*, 81 F.3d at 830. Put differently, the ALJ determined that Dr. Law's RFC assessment was "overly restrictive" because "it was unsupported by objective findings in the record," and then summarized Dr. Masood's evaluation that found Plaintiff was suited for "light exertional work." (AR 41-42.) While Dr. Masood's evaluation and opinion constitutes substantial evidence, *see Magallanes*, 881 F.2d at 751, merely summarizing her findings without providing specific and legitimate reasons for why those findings reject Dr. Law's RFC evaluation constitutes legal error, *see Lester*, 81 F.3d at 830.

**B. Dr. Masood**

"As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830 (citation omitted). Even if an examining physician's opinion is contradicted, an ALJ may only reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citation omitted). Whereas the ALJ determined that Plaintiff was limited to "frequent" handling and hand controls bilaterally, Dr. Masood's evaluation states that Plaintiff could only use both hands or perform fine finger and hand movements "occasionally." (AR 42, 539-540.) The ALJ does not provide clear or convincing reasons for rejecting Dr. Masood's determination that Plaintiff was limited to occasional, rather than frequent, use of her hands. *See Lester*, 81 F.3d at 830. The ALJ cites generally to Plaintiff's records from

Tri-City Health Center in support of her ability to frequently rather than occasionally use her hands. (AR 42, 404-455.) However, even if this or other evidence contradicted Dr. Masood's evaluation, the ALJ has failed to provide specific or legitimate reasons for rejecting Dr. Masood's medical opinion regarding Plaintiff's work-related limitations on the use of her hands. *See Lester*, 81 F.3d at 830. In the case of the Tri-City Health Center records, these primarily concern Plaintiff's mammogram screenings and treatment for gallbladder stones. (AR 404-455.) Plaintiff's Tri-City Health Center records mention her hands on a record dated November 13, 2012, when she was assessed for thumb and hand pain. (AR 418.) The ALJ cites to these records without providing any reason for why they contradict Dr. Masood's medical opinion. (AR 42.) Therefore, the ALJ's failure to provide any reason for rejecting Dr. Masood's medical opinion or a substantive basis for his own conclusion regarding Plaintiff's ability to frequently use her hands, *see Garrison*, 759 F.3d at 1012-13, constitutes legal error.

**C. Dr. Ozer**

The ALJ gave little weight to Dr. Ozer's assessment because "a onetime examination performed more than four years after the [Plaintiff]'s date last insured" was inadequate to assess Plaintiff's mental functioning before December 31, 2012. (AR 38.) As such, Dr. Ozer could not "know" information regarding the severity and limitations caused by Plaintiff's mental impairments. (AR 38.) Dr. Ozer is an examining physician whose uncontroverted opinion the ALJ may only reject with "clear and convincing reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830 (citation omitted). As with Dr. Law's evaluations, "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (citations omitted). Therefore, absent any other reason for discrediting Dr. Ozer's medical opinion, the ALJ failed to provide clear and convincing reasons for rejecting Dr. Ozer's opinion. *See Lester*, 81 F.3d at 830.

* * *

In sum, the Court finds that the ALJ committed legal error in discounting the medical opinions of Dr. Law, Dr. Masood, and Dr. Ozer.

United States District Court
Northern District of California

**IV. Remand**

Plaintiff asks the Court to remand the case for the payment of benefits or, alternatively, for further proceedings. When reversing an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke*, 379 F.3d at 595. Remand for an award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels*, 874 F.3d at 668 (internal quotation marks and citation omitted).

The first prong of the test is not satisfied here. For instance, further proceedings would determine the proper weight to assign Dr. Law's RFC and Fibromyalgia Medical Assessment Forms, Dr. Masood's evaluation of Plaintiff, and what possible reasons, if any, exist for discrediting Dr. Ozer's evaluation, or how crediting Dr. Ozer's evaluation would affect the step two evaluation of Plaintiff's mental impairments. Accordingly, the record must be more fully developed, and further proceedings would serve a useful purpose.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.

This Order disposes of Dkt. Nos. 18 & 21.

**IT IS SO ORDERED.**

Dated: September 30, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge